_____

|  |  |  |
|---|---|---|
| BAIS YAAKOV OF SPRING VALLEY, | ) | |
| | ) | |
| | ) | **CIVIL ACTION** |
| Plaintiff, | ) | |
| | ) | **NO. 12-40088-TSH** |
| v. | ) | |
| | ) | |
| ACT, INC., | ) | |
| | ) | |
| Defendant. | ) | |

_____ )

## ORDER AND MEMORANDUM ON MOTION TO CERTIFY CLASS (Docket No. 84)

### October 24, 2018

**HILLMAN, D.J.**

Bais Yaakov of Spring Valley ("Plaintiff") brought this putative class action against ACT, Inc. ("Defendant") alleging violation of the Telephone Consumer Protection Act ("TCPA") for faxing unsolicited advertisements without an opt-out provision. *See* 47 U.S.C. § 227. Plaintiff now moves to certify two classes comprised of schools that received similar faxes from Defendant. For the reasons set forth below, Plaintiff's motion (Docket No. 84) is ***denied***.

### Background

Defendant is a company that provides student assessment services. Among these services, Defendant administers the ACT test, a college admissions exam. Approximately 1.9 million high school students in the graduating class of 2015 took the ACT test, from all 50 states. The test was administered at approximately 7,000 high schools during the 2015-2016 testing cycle. More than

29,000 high schools in the United States had at least one student register for the ACT during the 2014-2015 cycle. (Docket No. 133 at 2).

As part of its business strategy, each year Defendant set "volume goals" to increase sales and visibility of the ACT. Rich Dep. 14:7-18. One of the marketing techniques used by Defendant was fax advertising. *Id.* at 35:7-36:7. Defendant administers the ACT six times per year and in the weeks leading up to each test, Defendant would send high schools throughout the east coast faxes advertising the ACT registration deadline. Twiggs Dep. 35:15-36:10; 38:4-39:11. Plaintiff alleges that Defendant obtained the fax numbers from a directory of school districts and high schools that Defendant purchased each year called the MDR. *Id.* at 41:14-43:14.

Plaintiff received fax advertisements from Defendant on March 5, 2012, April 22, 2012, and May 13, 2012. Sussman Decl. ¶ 3. Plaintiff contends that it never provided Defendant express invitation or permission to send these fax advertisements and that none contained an opt-out provision. *Id.* Further, Defendant admits that it sent more than 10,000 faxes that are the same or substantially similar to the advertisements sent to Plaintiff. Def.'s Interrog. Answers at 16-17. According to Plaintiff, Defendant's telephone records suggest that from June 30, 2008 through June 30, 2012, Defendant sent out more than 28,355 fax advertisements. *See* Bellin Decl. Ex. L.

Defendant argues that it has active, ongoing relationships with high schools around the country. *See* McCullough Decl. ¶¶ 6-26. In fact, "[t]housands of high schools have provided their facsimile numbers to ACT when requesting information" from Defendant and its "records include a fax number for more than 7,000 high schools that have served as ACT test centers and/or have provided their fact number to ACT in other contexts." *Id.* ¶ 15. Defendant notes that schools request and receive information from Defendant in numerous ways, including by fax, mail, telephone, and email. McCullough Decl. ¶¶ 25-26; Rich Dep. 15:3-15:10. These communications

are further described in declarations from school officials attached to Defendant's memorandum. *See* Hrasky Decl. Ex. 1. School officials assert, for instance, that they "periodically request information from ACT . . . . This is true now, and it has been true throughout my employment at the School. Our School has requested and accepted information from ACT by regular mail, by facsimile to our School's fax machine and/or by electronic mail." *Id.* at 2. Further, the school officials note that their schools have "ongoing relationships . . . with ACT [and that] . . . [t]he information we solicit and receive from ACT puts us in a position to properly advise our students." *Id.* at 4. Finally, the school officials said that throughout their employment, "ACT would have had permission from me or other School personnel to send these types of informational communications using any available type of communication, including facsimile." *Id.* at 15.

### Telephone Consumer Protection Act

Plaintiff alleges that Defendant's conduct violated the TCPA. The TCPA prohibits certain unsolicited advertisements sent via phone or facsimile. 47 U.S.C. § 227(b)(1). Unsolicited advertisements are "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." *Id.* § 227(a)(5). Unsolicited advertisements, however, may be sent if (1) the sender and recipient have "an established business relationship," (2) the recipient voluntarily provided his fax number to the sender either directly or indirectly through "a directory, advertisement, or site on the Internet," and (3) the "unsolicited advertisement contains" an opt-out notice meeting the requirements promulgated by the statute. *Id.* § 227(b)(1)(C)(i)-(iii).

Plaintiff argues, however, that under the FCC's Solicited Fax Rule, 47 C.F.R. § 64.1200(a)(4)(iv), both solicited and unsolicited faxes are subject to the "opt-out" notice

requirement of 47 U.S.C. § 227(b)(1)(C)(iii). Therefore, Plaintiff argues that whether or not recipients gave consent is irrelevant to this Court's inquiry.[1] Plaintiff argues that all faxes sent by Defendant without an opt-out notice violate the statute.

The Solicited Fax Rule, however, has been invalidated by the D.C. Circuit. In 2006, the FCC promulgated the Solicited Fax Rule. Thereafter, businesses and courts questioned whether the FCC had the authority to promulgate the rule since the TCPA seemed to contemplate only unsolicited faxes. *See, e.g.*, *Ameriguard, Inc. v. Univ. of Kansas Med. Center Res. Inst.*, 222 Fed. Appx. 530, 531 (8th Cir. 2007) (affirming dismissal because the fax did "not constitute an 'unsolicited advertisement.'"). As a result, many businesses petitioned the FCC for a declaratory ruling requesting the agency to concede that it overreached. In 2014, however, the FCC stood by the Solicited Fax Rule. *See* Order, *Petitions for Declaratory Ruling, Waiver, and/or Rulemaking Regarding the Commision's Opt-Out Requirements for Faxes Sent with the Recipient's Prior Express Permission*, 29 F.C.C.R. 13,998 (2014). In *Bais Yaakov of Spring Valley v. FCC*, the D.C. Circuit vacated the 2014 Order and held the Solicited Fax Rule invalid. 852 F.3d 1078, 1083 (D.C. Cir. 2017) ("We hold that the FCC's 2006 Solicited Fax Rule is unlawful to the extent that it requires opt-out notices on solicited faxes.").

In *Bais Yaakov*, the D.C. Circuit resolved many petitions for review that were consolidated and transferred by the Judicial Panel on Multidistrict Litigation. *See Sandusky Wellness Ctr. V. ASD Specialty Healthcare*, 863 F.3d 460, 467 (6th Cir. 2017) (describing the procedural history of *Bais Yaakov*). When the Multidistrict Litigation Panel consolidated the challenges to the FCC's regulation and transferred them to the D.C. Circuit, that court became "the sole forum for addressing . . . the validity of the FCC's rule[ ]." *Peck v. Cingular Wireless, LLC*, 535 F.3d 1053,

[1] Plaintiff also argues that consent is consequently irrelevant to the predominance analysis under Rule 23(b)(3) below.

1057 (9th Cir. 2008) (quoting *MCI Telecomms. Corp. v. U.S. West Comms.*, 204 F.3d 1262, 1267 (9th Cir. 2000)).  As a result, the decision of that court is binding precedent on all circuits.  *True Health Chiropractic Inc. v. McKesson Corp.*, 896 F.3d 923, 930 (9th Cir. 2018).  Thus, this Court is bound by the D.C. Circuit's holding and Defendant is only liable under the TCPA insofar as it send unsolicited faxes without an opt-out provision.

## **Standard of Review**

Plaintiff seeks to certify two classes.  Class A comprises "[a]ll persons in the United States from July 30, 2008 through July 30, 2012 to whom Defendant sent or caused to be sent an unsolicited facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which contained no opt-out notice." (Docket No. 87 at 6).  Class B includes "[a]ll persons in the United States from July 30, 2008 through July 30, 2012 to whom Defendant sent or caused to be sent a facsimile advertisement, advertising the commercial availability or quality of any property, goods, or services, which contained no opt-out notice." *Id.*

Rule 23(a) of the Federal Rules of Civil Procedure sets forth the following criteria for class certification:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

In addition to the elements set forth in Rule 23(a), a putative class-action plaintiff must also satisfy the requirements of Rule 23(b).  In this case, Plaintiffs have elected to proceed under

subsection (3) of Rule 23(b), which is satisfied if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

The putative class action plaintiff bears the burden of satisfying Rule 23, which "does not set forth a mere pleading standard." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S.Ct. 2541 (2011). The plaintiff must "affirmatively demonstrate" compliance with the rule. *Id*. In order to achieve class certification, a plaintiff must "'be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact,' typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 33, 133 S.Ct. 1426 (2013) (quoting *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541) (emphasis in original). A plaintiff "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id.*

It is the court's responsibility to engage in a "rigorous analysis," which may involve "prob[ing] behind the pleadings" in order to decide whether certification is appropriate. *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541 (quoting *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364 (1982)). "Such an analysis will frequently entail 'overlap with the merits of the plaintiff's underlying claim' . . . because the 'class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" *Comcast*, 569 U.S. at 33-34, 133 S.Ct. 1426 (quoting *Wal-Mart*, 564 U.S. at 351, 131 S.Ct. 2541).

## Discussion

The requirement of Rule 23(b)(3), that questions of law or fact common to class members predominate over any questions affecting only individual members, is dispositive of this case. The party seeking class certification bears the burden of "affirmatively demonstrate[ing] his compliance" with the requirements of Rule 23. *Comcast*, 569 U.S. at 33, 133 S.Ct. 1426. The inquiry into predominance tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231 (1997). "While 'the predominance criterion is far more demanding' than the commonality requirement, it presumes that individual issues will exist." *Donovan v. Philip Morris USA, Inc.*, 268 F.R.D. 1, 28 (D. Mass 2010) (quoting *Amchem*, 521 U.S. at 624, 117 S.Ct. 2231). The inquiry "asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). It is "the court's duty to take a 'close look' at whether common questions predominate over individual ones." *Comcast*, 569 U.S. at 34, 133 S.Ct. 1426 (quoting *Amchem*, 521 U.S. at 615, 117 S.Ct. 2231).

The common questions must have the "capacity . . . to generate common answers apt to drive the resolution of the litigation." *Wal-Mart*, 564 U.S. at 350, 131 S.Ct. 2541 (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009) (emphasis omitted). Defenses that must be individually litigated can defeat class certification. *Id.* at 367, 131 S.Ct. 2541. Yet, "[w]hen 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as . . . some affirmative defenses peculiar to some individual class members." *Tyson Foods*, 136 S.Ct. at 1045 (quoting 7AA C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 1778, at 123-24

(3d ed. 2005)).  Finally, if a defendant argues that affirmative defenses present individual inquiries precluding a finding of predominance, the burden of persuasion shifts.  *See True Health*, 896 F.3d at 931.

### 1.  Class B

Given the D.C. Circuit's holding in *Bais Yaakov*, consent to a faxed advertisement is an affirmative defense against members of Class B.  Defendant, however, has the burden of demonstrating that this affirmative defense would present sufficient individual inquiries to render class certification inappropriate.  *See True Health*, 896 F.3d at 931 (concluding that in a TCPA case "'prior express invitation or permission' is an affirmative defense on which [the defendant] bears the burden of proof.").  To satisfy that burden here, Defendant must produce evidence that consent existed to a faxed advertisement without an opt-out provision.  Merely hypothesizing that the court will at some point have to inquire into potential consent is not enough to defeat predominance. *See Waste Management Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) ("We are unwilling to fault a district court for not permitting arguments woven entirely out of gossamer strands of speculation and surmise to tip the decisional scales in a class certification ruling.").

Plaintiff points to *Sparkle Hill, Inc. v. Interstate Mat Corp.* for the proposition that because the defendant culled numbers "from a general business database (rather than, say, a list of defendant's customers).  That evidence raises a strong inference that the recipients never consented to receipt of defendant's faxes." No. 11-10271 , 2012 WL 6589258, at *3 (D. Mass. Dec. 18, 2012).  In that case, however, the court also noted that the "defendant . . . presented no evidence of express permission from any recipient, and never sought prior permission from recipients before sending its fax advertisements.  Defendant has likewise presented no evidence of an established business relationship with any recipient." *Id.*  Thus, contrary to the Plaintiff's arguments, *Sparkle*

*Hill* in fact stands for the proposition that "common issues predominate where defendants use fax numbers obtained from an outside source *and* where there is no evidence of prior permission or business relationships." *Id.* (emphasis added). Here, while Defendant has utilized the MDR, it has also demonstrated that many schools had requested or consented to Defendant's faxed advertisements and that it has established and ongoing relationships with thousands of schools.

The facts here are more like those in *Sandusky Wellness Center*. In *Sandusky*, the defendant purchased a list of physician contact information from a third-party provider and sent faxes to over 40,000 recipients. 863 F.3d at 464-65. Some of the physicians on the list also happened to be current or former customers. *Id.* The defendant produced evidence that "several thousand" receptions were current or former customers. *Id.* at 468. "This evidence consisted of . . . various forms where customers had provided [the defendant] with their fax numbers." *Id.* The court found that individual questions predominated because

> the district court would be tasked with filtering out those members to whom [the defendant] was not liable—those individuals who solicited the . . . fax. Regardless of other questions that may be common to the class, identifying which individuals consented would undoubtedly be the driver of the litigation . . . Thus, the predominant issue of fact is undoubtedly one of *individual* consent.

*Sandusky*, 863 F.3d at 469 (emphasis in original).

In *True Health Chiropractic*, the Ninth Circuit denied class certification in a TCPA case for similar reasons. In that case, the defendant submitted a declaration from a sales representative and deposition from a former sales representative. 896 F.3d at 927. Essentially, both said that customers would often request that the defendant send faxes. *Id.* Based on this showing, the court found that the defendant

> provided evidence . . . that its consent defenses to these claims would be based on individual communications and personal relationships between [the defendant's] representatives and their customers. The variation in such communications and relationships, as evidenced by the declaration of Mr. Paul and deposition testimony

of Ms. Holloway, is enough to support denial of class certification under Rule 23(b)(3) for the putative class members . . . .

*Id.* The *Truth Health Chiropractic* court did, however, certify two other classes because consent defenses did not preclude a finding of predominance. *Id.* at 932. In those classes, "members gave consent by providing their fax numbers when registering a product . . . [and] some gave consent by entering into soft-ware licensing agreements." *Id.* The court held that because "there is little or no variation in the product registrations and the EULAs . . . [c]onsent, or lack thereof, is ascertainable by simply examining the product registrations and the EULAs." *Id.*

As was the case in *Sandusky Wellness Center*, ACT has active and ongoing relationships with thousands of schools around the country. McCullough Decl. ¶ 6-26. Like customers in *Sandusky*, "[t]housands of high schools have provided their facsimile numbers to ACT when requesting information" from Defendant. *Id.* ¶ 15. In fact, Defendant's "records include a fax number for more than 7,000 high schools that have served as ACT test centers and/or have provided their fax number to ACT in other contexts." *Id.* Further, just as the declaration and deposition testimony were a sufficient evidentiary showing in *True Health Chiropractic* to preclude a finding of predominance, the Rich deposition, McCullough declaration, and declarations from 78 schools demonstrate that if this class were certified, the predominant issue will be individual consent. Just as in that case, this Court would have to parse through each unique relationship to filter out those members to whom Defendant is not liable. And while the *True Health Chiropractic* court certified two classes with limited variation in the evidence of consent, the class members here "contact ACT in a variety of ways, including by telephone, regular mail, email, and facsimile, and through an online contact form." MuCullough Decl. ¶ 26. Therefore, determining consent would not be as simple as looking for a checked box, it would be a highly individualized inquiry into Defendant's relationship with each school.

Therefore, I find that Defendant has proffered sufficient evidence to satisfy its burden of demonstrating the need for individual inquiries. This showing precludes a finding of predominance of common questions and bars class certification for Class B.

### 2. Class A

A "fail-safe class" "is defined so that whether a person qualifies as a member depends on whether the person has a valid claim on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 825 (7th Cir. 2012). The First Circuit has noted that these classes are "inappropriate" as they make it "virtually impossible for the Defendants to ever 'win' the case, with the intended class preclusive effects." *In re Nexium Antitrust Litig.*, 777 F.3d 9, 22 (1st Cir. 2015); *see also Randleman v. Fidelity Nat. Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011) (noting that fail-safe classes improperly "shields the putative class members from receiving an adverse judgment. Either the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgement.").

District courts, however, must "exercise caution when striking class action allegations based solely on the pleadings . . . because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discover to which they would otherwise bet entitled on questions relevant to class certification." *Manning v. Boston Medical Center Corp.*, 725 F.3d 34, 59 (1st Cir. 2013). "Accordingly, a court should typically await the development of a factual record before determining whether the case should move forward on a representative basis" unless "it is obvious from the pleadings that the proceeding cannot possibly move forward on a classwide basis." *Id.* This is especially true in the context of fail-safe classes because "issues of over-breadth and fail-safe definitions can and often should be solved by refining the class definition rather than

by flatly denying class certification on that basis." *O'Hara v. Diageo-Guinness, USA, Inc.*, 306 F. Supp. 3d 441, 468 (D. Mass. 2018).

Here, Class A comprises those who received an unsolicited fax without an opt-out provision. Thus, the class fits squarely within the definition of a "fail-safe class" because class membership is defined by whether or not members have a valid claim. Further, while this Court must exercise caution when dismissing a "fail-safe" class, the problem here cannot be remedied by refining the class definition. If class membership were expanded to not only include those that received unsolicited facsimiles, the refined class would encounter the same predominance defeating individual inquiries of Class B. Thus, this class is a "fail-safe class" and is incapable of refinement such that it is appropriate for classwide adjudication.[2]

### Conclusion

For the reasons stated above, Plaintiff's motion to certify class (Docket No. 84) is ***denied***.

**SO ORDERED**

/s/ *Timothy S. Hillman*
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**

---

[2] One concern when declining to certify a class is that individual claims would be so small that individual plaintiffs would lack the incentive to bring suit and violations would consequently evade review. Here, however, "[t]he statute provides for a *minimum* recovery of $500 for each violation as well as treble damages if the plaintiff can prove willful or knowing violation . . . The statutory remedy is designed to provide adequate incentive for an individual plaintiff to bring suit on his own behalf." *Forman v. Data Transfer, Inc.*, 164 F.R.D. 400, 405 (E.D. Pa. 1995) (emphasis in original).